UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:17-CV-190-TBR

AMRING PHARMACEUTICALS, INC.,                                           PLAINTIFF

v.

UPS-SUPPLY CHAIN SOLUTIONS, INC., et al.,                            DEFENDANTS

**Memorandum Opinion & Order**

This matter comes before the Court upon Motion by Plaintiff Amring Pharmaceuticals, Inc., ("Amring"), for default judgment against Defendant Edin Transfer, Inc. ("Edin"). [DN 22.] This Motion was filed on January 24, 2018, and Edin has failed to file a Response. For the following reasons, **IT IS HEREBY ORDERED** that Amring's Motion [DN 22] is **GRANTED.**

**I. Factual Background**

The following Factual Background section is taken from Amring's Complaint, [DN 1], Amended Complaint, [DN 10], and Amring's instant Motion. [DN 22.] Amring is a pharmaceutical company "which sells, among other…goods, desmopressin acetate," which "is a man-made form of a naturally occurring hormone, and is used to treat bed-wetting, central cranial diabetes insipidus and increased thirst and urination caused by head surgery or head trauma." [DN 1, at 3.] According to Amring, due to "its chemical makeup, desmopressin acetate must be stored between 2-8 degrees Celsius. Deviation from this temperature range for any significant time will result in permanent damages and render the drug unusable." [*Id.*] Amring and Defendant UPS-Supply Chain Solutions, ("UPS-SCS"), entered into a logistical services agreement, part of which entrusted UPS-SCS to complete two shipments of desmopressin from

1

Chicago, Illinois to Brooks, Kentucky. [*Id.*] Amring believes that UPS-SCS subcontracted these shipments to Defendant Mid-American Specialized Transport ("MAST"). [*Id.* at 4.]

The first shipment of the drug, in March 2016, according to remote data loggers installed with the shipment by Amring, was allegedly subjected to temperatures below 0 degrees Celsius for at least ten hours during the shipment to Kentucky. [*Id.*] Amring alleges that "[t]he declared value of damaged product with respect to this claim was $447,952.49." [*Id.*] The second shipment, which occurred in April 2016, had the same result, with the drug allegedly being subjected to temperatures below 0 degrees Celsius for at least ten hours. [*Id.* at 5.] This time, the alleged loss in value was $357,870.90. [*Id.* at 6.] On July 28, 2017, Amring filed an Amended Complaint. [DN 10.] Therein, Amring added two more defendants to the action: Edin and CKR Transport, Ltd. ("CKR"). [*Id.*] According to the Amended Complaint, "MAST provided transportation services" for the drug "and contracted with Edin for the transport of [it]…from O'Hare International Airport to Brooks, Kentucky." [*Id.* at 6.] In other words, Amring alleges that "Edin assumed responsibility for, and was responsible for, the care and custody of the March Shipment [of the drug]…." [*Id.* at 19.] Amring alleges that the portions of the shipment were damaged while in the custody and control of Edin, and that Edin is liable for the loss. [*Id.*]

As a result of these incidents, Amring filed suit in federal court and, in its Amended Complaint, it alleges the following causes of action (1) breach of contract against UPS-SCS; (2) breach of the duty to cooperate against UPS-SCS; (3) breach of the implied covenant of good faith and fair dealing against UPS-SCS; (4) negligence against UPS-SCS; (5) breach of contract and/or duties under the Carmack Amendment against MAST; (6) a bailment claim against MAST; (7) negligence against MAST; (8) breach of a third party beneficiary contract against MAST; (9) breach of the implied covenant of good faith and fair dealing against MAST; (10)

breach of contract and/or duties under the Carmack Amendment against Edin; (11) a bailment claim against Edin; (12) breach of contract and/or duties under the Carmack Amendment against CKR; and (13) a bailment claim against CKR. [*See generally id.*]

## II. Legal Standard

Pursuant to Federal Rule of Civil Procedure 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Next, under Rule 55(b), default judgment may be entered either by the Clerk under subsection (b)(1), or by the Court under subsection (b)(2). Rule 55(b)(2) permits the Court to enter a default judgment where the plaintiff's claim is not for a sum certain. *See* Fed. R. Civ. P. 55(b)(1)-(2). Specifically, "the party must apply to the court for a default judgment," which the Court may then set aside at a later date pursuant to Rule 60(b). *See* Fed. R. Civ. P. 55(b)(2), (c).

Importantly, in reaching a determination regarding whether to enter a default judgment, courts in the Sixth Circuit usually consider factors such as the following:

> [1] the amount of money potentially involved; [2] whether material issues of fact or issues of substantial public importance are at issue; [3] whether the default is largely technical; [4] whether plaintiff has been substantially prejudiced by the delay involved; [5] and whether the grounds for default are clearly established or are in doubt.

*Joe Hand Promotions, Inc. v. Dick*, No. 5:15-cv-00202, 2017 WL 1313792, at *2 (Apr. 5, 2017) (quoting 10A Charles A. Wright et al., *Federal Practice and Procedure* § 2685 (4th ed.), Westlaw (database updated January 2017) (footnotes omitted)).

## III. Discussion

Amring filed its original Complaint in this action on March 30, 2017. [DN 1.] Later, it filed an Amended Complaint, naming Edin as a co-defendant in the action, on July 28, 2017.

[DN 10.] In the interim period spanning approximately nine months, Edin has not entered an appearance or otherwise answered the Amended Complaint, [*id.*], the Motion for Entry of Default, [DN 18], or the Motion for Default Judgment. [DN 22.] In short, Edin has failed to defend this action in any way. Thus, the question becomes whether, after having properly applied for an entry of default with the Clerk of Court, Amring is now entitled to a default judgment against Edin. The Court holds that Amring is entitled to such relief, and will enter a default judgment against Edin in favor of Amring at this time.

A.

Pursuant to Fed. R. Civ. P. 8(b)(6), once Edin failed to enter an appearance and the Clerk entered a default against it, all facts in Amring's Amended Complaint against it were considered admitted. *See* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."); *see also Thomas v. Miller*, 489 F.3d 293, 299 (6th Cir. 2007). Notably, "Fed. R. Civ. P. 55 does not require a presentation of evidence as a prerequisite to the entry of a default judgment, although it empowers the court to conduct such hearings as it deems necessary and proper to enable it to enter judgment or carry it into effect." *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 848 (E.D. Mich. 2006) (citations omitted). Notably though, "Rule 55 does not *require* an evidentiary hearing as a prerequisite to the entry of default judgment if damages are contained in documentary evidence or detailed affidavits and can be ascertained by computation on the record before the Court." *G & G Closed-Circuit Events, LLC v. Potopsky*, No. 1:11-cv-00140, 2012 WL 11130, at *1 (N. D. Ohio Jan. 3, 2012) (emphasis added).

In support of its Motion for default judgment, Amring has provided the following information to the Court: (1) Edin's summons and proof of service [DN 22-2]; (2) a commercial

4

invoice dated February 11, 2016, indicating a March 1, 2016 delivery date, totaling $257,051.19 [DN 22-4]; (3) a second commercial invoice bearing the same dates, totaling $190,901.30 [*id.*]; (4) the affidavit of Walter Kibbe, the Associate Director of Amring's supply chain operations [DN 22-5]; (5) a Cargo Claim Form dated March 28, 2016, detailing the drugs Amring alleges were damaged in transit [DN 22-6]; and (6) the affidavit of Todd Greer, local counsel for Amring. [DN 22-7.] The Court finds, based upon these attachments, that there is sufficient evidence to ascertain Amring's damages, and an evidentiary hearing is therefore unnecessary to determine the required sum certain pursuant to Rule 55.

**B.**

As noted above, Amring has two claims against Edin: one for breach of contract and/or duties under the Carmack Amendment, and one bailment claim. [*See* DN 10.] Thus, the issue for the Court to decide here is whether the facts set forth by Amring in its Amended Complaint entitle it to recover the damages it seeks from Edin based on either theory. These two claims arise from the same nucleus of operative facts. In other words, Amring proceeds against Edin under the Carmack Amendment, and pleads in the alternative that, even if Edin does not qualify as a motor carrier under the Carmack Amendment, Edin acted as bailee of the goods and breached its duty to Amring. [*See* DN 10, at 19-20.] With respect to the breach of contract claim, the Court finds that Amring has pleaded sufficient facts to set out a claim.

"The Carmack Amendment, enacted in 1906 as an amendment to the Interstate Commerce Act, 24 Stat. 379, created a national scheme of carrier liability for loss or damages to goods transported in interstate commerce." *Exel, Inc. v. S. Refrigerated Transp., Inc.*, 807 F.3d 140, 148 (6th Cir. 2015) (citing *Adams Express Co. v. Croninger*, 226 U.S. 491, 503-06 (1913)). In essence, "[t]he Amendment restricts carriers' ability to limit their liability for cargo damage. It

makes a motor carrier fully liable for damage to its cargo unless the shipper has agreed to some limitation in writing." *Id.* (citing 49 U.S.C. § 11706(a), (c), § 14101(b)). "Making carriers strictly liable relieves shippers of the burden of determining which carrier caused the loss as well as the burden of proving negligence." *Id.* (citing *Certain Underwriters at Interest at Lloyds of London v. UPS*, 762 F.3d 332, 335 (3d Cir. 2014)). "Carriers in turn acquire reasonable certainty in predicting potential liability because shippers' state and common law claims against a carrier for loss to or damage were preempted." *Id.* (citing *Lloyds of London*, 762 F.3d at 335).

Within the Carmack Amendment, "Section 14706(a)(1) makes the carrier liable to the person entitled to recover under the receipt or bill of lading." *Id.* (citing 49 U.S.C. § 14706(a)(1)). "The Carmack Amendment permits parties to recover damages for 'actual loss or injury to the property.'" *L.A. Enters., Inc. v. Roadway Exp., Inc.*, No. 1:06-cv-11, 2006 WL 1129389, at *2 (E.D. Tenn. Apr. 24, 2006) (quoting 49 U.S.C. § 14706(a)(1)). "The amount of actual loss to property is generally the difference between the market value of the property in the condition in which it should have arrived at its destination and its market value in the condition in which it did arrive." *Id.* (citing *Contempo Metal Furniture Co. of California v. E. Texas Motor Freight Lines, Inc.*, 661 F.2d 761, 764 (9th Cir. 1981)). Also, "[s]ome courts have held that it can be proper to include freight charges in the calculation of actual loss." *Id.* (citing *Marquette Cement Mfg. Co. v. Louisville & Nashville R.R. Co.*, 406 F.2d 731, 732 (6th Cir. 1969), *Contempo Metal Furniture*, 661 F.2d at 764).

The Sixth Circuit Court of Appeals has explained that "the shipper may establish a prima facie case" for a claim under the Carmack Amendment "with a showing of three basic elements: (1) that the initial ('receiving') carrier received the cargo in good condition, (2) that the cargo was lost or damaged, and (3) the amount of actual loss or damages." *CNA Ins. Co. v. Hyundai*

*Merchant Marine Co., Ltd.*, 747 F.3d 339, 353 (6th Cir. 2014). It presents a "very low threshold." *Id.*[1]

Amring has sufficiently alleged facts in its Amended Complaint which, taken as true for purposes of this Motion, satisfy the three above elements. First, Amring has alleged that "[t]he March Shipment was delivered to Edin in good order and condition," thereby satisfying element one. [*See* DN 10, at 19.] Next Amring has alleged that "[p]ortions of the March Shipment being transported by Edin [were] damaged during transit when the temperature dropped below the acceptable range specified by Amring, permanently damaging the cargo." [*Id.*] Finally, Amring has sufficiently alleged "the amount of actual loss or damages." *See CNA Ins. Co.*, 747 F.3d at 353. Specifically, in its Carmack Amendment claim section against Edin, Amring states that it "has sustained damages in an amount in excess of $805,823.39, plus related fees, charges, and expenses." [DN 10, at 19.] Additionally, discussing the March Shipment in particular, Amring states that "[t]he declared value of the damages product…was $447,952.49." [*Id.* at 6.] Plainly then, Amring has sufficiently alleged facts which, taken as true, establish a prima facie case for a violation of the Carmack Amendment by Edin.

The only issue remaining for the Court, then, is whether Amring has carried its burden of establishing its entitlement to the amount of damages it has requested in the instant Motion. In support of its contention that it is entitled to a default judgment against Edin in the amount of $447,952.49, plus post-judgment interest at the rate of 6% per annum from the date of the

---

[1] In the typical case, after a plaintiff establishes a prima facie case under the Carmack Amendment, "the burden shifts to the defendant-carrier to show both that it was not negligent and that the damage was instead due to one of five excepted causes," which are "(1) an act of God; (2) an act of terrorism or war; (3) an act of the shipper itself; (4) an act of public authority; or (5) the inherent vice or nature of the goods." *CNA Ins. Co.*, 747 F.3d at 353 (citing *Missouri Pac. R.R. v. Elmore & Stahl*, 377 U.S. 134, 137-38 (1964)). However, as this is a Motion for default judgment, and Edin has neither entered an appearance nor otherwise defended itself against this Motion, there is no need for the Court to engage with the burden-shifting portion of the analysis. That Amring can establish a prima facie case is sufficient for purposes of this Motion.

judgment herein, Amring has provided the following documents: two invoices, with a corresponding affidavit attesting to their validity, and a Cargo Claim Form.

The first invoice, dated February 11, 2016, ("Invoice One"), shows Amring as the buyer of a large quantity of Desmopressin Acetate from Ferring Pharmaceuticals, ("Ferring"), to be shipped from Germany through Chicago to Brooks, Kentucky. [DN 22-4, at 1.] The total cost evidenced by Invoice One is $257,051.19. [*Id.*] The second invoice, also dated February 11, 2016, ("Invoice Two"), shows Amring as the buyer of another large quantity of Desmopressin Acetate from Ferring, to be shipped along the same route. [*Id.* at 3.] The total cost evidenced by Invoice Two is $190,901.30. [*Id.*] The corresponding affidavit is from Walter Kibbe, ("Kibbe"), Associate Director of Amring's supply chain operations. [DN 22-5.] Therein, Kibbe avers that the two previously-described invoices "are true and accurate copies of two invoices reflecting Amring's purchase of the Subject Desmopressin Acetate," the total of which is $447,952.49. [*Id.*] Kibbe further avers that "[t]he Subject Desmopressin Acetate was subsequently transported by Edin…from O'Hare Airport in Chicago, Illinois to a storage facility in Brooks, Kentucky. During this transport, the Subject Desmopressin Acetate was destroyed." [*Id.* at 1-2.] Accordingly, he avers that "Amring suffered a loss of $447,952.49, which is the price Amring paid for the Subject Desmopressin Acetate." [*Id.* at 2.] Finally, Amring attached a Cargo Claim Form submitted to UPS-SCS for the same amount: $447,952.49. [DN 22-6, at 1.]

The Court concludes that Invoices One and Two, the corresponding affidavit, and the Cargo Claim Form all combine to provide more than sufficient evidence to establish Amring's entitlement to the $447,952.49 it claims it is owed. Amring has also requested that post-judgment interest be awarded at six percent per annum as of the date of entry of this Memorandum Opinion & Order. [DN 22-8, at 1.] However, the relevant statute, 28 U.S.C. § 1961(a), provides

that post-judgment interest under these circumstances shall be allowed, but "shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." Subsection (b) notes that "[i]nterest shall be computed daily to the date of payment," and should be compounded each year. 28 U.S.C. § 1961(b). Therefore, while Amring will be entitled to post-judgment interest, it will be set at a rate of 2.12%, which is consistent with the statute and the corresponding interest rate figures, available at https://www.federalreserve.gov/releases/h15/.

### IV. Conclusion

Accordingly, **IT IS HEREBY ORDERED** that Amring's Motion for default judgment, [DN 22], against Edin is **GRANTED**.

There being no just cause for delay in its entry, this is a final order.

A separate judgment will be entered in accordance with this Opinion and Order.

**IT IS SO ORDERED**.

cc:     Counsel of Record